NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITIZENS BANK OF PENNSYLVANIA, : | |
| : | Hon. Faith S. Hochberg |
| Plaintiff, : | |
| : | Civil No. 10-478 (FSH) |
| v. : | |
| : | **ORDER & OPINION** |
| EXECUTIVE CAR BUYING SERVICES, INC., : | |
| EXECUTIVE CAR RENTALS, LLC, RALPH : | Date: November 10, 2010 |
| VALENT, MICHAEL LAMOTTA, LAVAL : | |
| PROPERTIES, LLC, LIN VALENT and DEBRA : | |
| LAMOTTA, : | |
| Defendants. | |

This matter comes before the Court on Plaintiff Citizens Bank of Pennsylvania's Motion to Dismiss Defendants' Second Amended Counterclaims. The Court has reviewed the parties' submissions pursuant to Fed. R. Civ. P. 78.

## BACKGROUND

Defendants Executive Car Buying Services, Inc. and Executive Car Rentals, LLC (collectively, the "Executive Entities") own and operate a used car business in New Jersey. On August 31, 2006, Plaintiff Citizens Bank of Pennsylvania entered into a commercial loan agreement with the Executive Entities.[1] Defendants Laval Property, LLC; Ralph and Lin Valent; and Michael and Debra LaMotta served as guarantors for the Executive Entities. Ralph Valent

---

[1] The agreement included the "Floor Plan Financing Loan and Security Agreement," as well as a "Revolving Demand Note" (collectively, the "Loan Documents").

and Michael LaMotta (the "Principals") are the principals of the Executive Entities.

Under the Loan Documents, Plaintiff provides "floor plan financing" to the Executive Entities to allow for the purchase of motor vehicles for resale.  After the vehicles are sold, the Executive Entities are required to turn the sale proceeds over to Plaintiff.  The Loan Documents give Plaintiff a perfected first priority security interest in various of the Executive Entities' assets, including their motor vehicle inventory.

The parties offer divergent accounts of how the relationship between Plaintiff and the Executive Entities unfolded.  Plaintiff alleges that from the beginning, its relationship with the Executive Entities has been tainted by fraud.  For example, Plaintiffs allege that the Executive Entities sold numerous vehicles purchased with floor plan financing without then remitting payment as required by the Loan Documents.  Defendants allege that Plaintiff's representatives made a series of misrepresentations to the Principals in urging them to sign the Loan Documents and prevented them from presenting the Loan Documents to counsel for independent review. Defendants further allege that in February 2009, Plaintiff breached its oral contract with the Executive Entities by imposing unreasonable conditions on their line of credit, causing the businesses to fail.

On April 27, 2009, Plaintiff entered into a Forbearance Agreement with the Executive Entities, the Principals and Laval Properties.  The Forbearance Agreement was amended three times.  Under the Forbearance Agreement, the signatories acknowledged that the Executive Entities were in default on certain of their obligations under the Loan Documents and that, absent the Forbearance Agreement, Plaintiff was entitled to immediate payment in full of all loan obligations.  In return, Plaintiff agreed to temporarily forbear enforcement of the provisions of

the Loan Documents.

Plaintiff alleges that the Executive Entities' continued not to remit payments and to engage in other misconduct after the Forbearance Agreement was put in place. Plaintiff estimates that as of January 25, 2010, Defendants were indebted to Plaintiff in the amount of $2,590,801.04, in addition to interest, late fees and other related charges due under the Loan Documents.

This case was filed on January 27, 2010. Along with its Complaint, Plaintiff filed an emergency application seeking the appointment of a Receiver. On January 29, 2010, this Court issued an order appointing a temporary receiver and directing Defendants to show cause why this Court should not, inter alia, convert the temporary receivership into a permanent receivership with the power to liquidate and dissolve the Executive Entities for the benefit of Plaintiff and the Executive Entities' creditors. On February 9, 2010, this Court approved a consent order appointing a permanent receiver.[2]

On May 19, 2010, Defendants filed their Second Amended Answer and Counterclaims. The various Defendants bring a total of thirteen counterclaims, alleging: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) lender's liability; (4) violations of the New Jersey Consumer Fraud Act; (5) fraud and fraud in the inducement; (6) misrepresentation; (7) negligence; (8) intentional interference with prospective economic advantage; (9) economic duress; (10) prima facie tort; (11) declaratory judgment that Laval

---

[2] Plaintiff has filed a motion to hold Ralph Valent and Michael LaMotta in contempt of this Court's January 29, 2010 and February 9, 2010 order. The Receiver has averred that Valent and LaMotta have, inter alia, removed business records from the premises maintained by the Executive Entities and improperly accessed bank accounts held by the Executive Entities. This Court will hold a hearing on Plaintiff's motion on November 16, 2010.

Property's guaranty agreement is invalid; (12) abuse of process; and (13) frivolous litigation.

## DISCUSSION

"The standard governing a motion to dismiss a counterclaim is the same as the well known standard governing motions to dismiss generally." Teva Women's Health, Inc. v. Lupin, Ltd., No. 10-80 (FSH), 2010 U.S. Dist. LEXIS 115122, at *2 n. 1 (D.N.J. Oct. 27, 2010); Ioselev v. Schilling, No. 09-6039 (FSH), 2010 U.S. Dist. LEXIS 96207, at *6 (D.N.J. Sept. 14, 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### I. PENNSYLVANIA LAW GOVERNS THE RELATIONSHIP BETWEEN THE PARTIES

Both the Loan Documents and the guaranty agreements provide that Pennsylvania law governs the relationship between the parties. (Cmplt., Ex. A, D-G)  Defendants argue, however, that this Court should disregard the choice of law provisions in the various agreements because they violate public policy.

"'Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy.'" Homa v. Am. Express Co., 558 F.3d 225, 227 (3d Cir. 2009) (quoting Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 614 (1992)).

"The law of the state chosen by the parties will apply, unless either: '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Instructional Sys., 130 N.J. at 341-42 (quoting Restatement (Second) of Conflicts of Laws § 187 (1969)).

The first prong of the Instructional Systems test clearly does not apply here: Plaintiff is a Pennsylvania entity; thus, Pennsylvania has a substantial relationship to the parties. See Instructional Sys., 130 N.J. at 342 (finding that because defendant corporation was headquartered in California, California law had a substantial relationship to the parties).

Instead, Defendants argue that the application of Pennsylvania law would undermine New Jersey's interest in having its laws applied to protect its citizens. Specifically, Defendants claim that the Loan Documents and guaranty agreements constitute contracts of adhesion and so the choice of law provisions contained therein are invalid.

Defendants have failed to make an adequate showing that the Loan Documents and guaranty agreements are contracts of adhesion. See infra pp. 7-9. Even if they had made such a showing, they have not satisfied the requirements for invalidating a contractual choice of law provision articulated in Instructional Systems.

Under both New Jersey and Pennsylvania law, a contract of adhesion is not necessarily unenforceable if the terms of the contract are not contrary to the public interest or to the public policies of the state of New Jersey. See Prescription Counter v. AmerisourceBergen Corp., No.

5

04-5802 (SRC), 2007 U.S. Dist. LEXIS 84102, at *30 (D.N.J. Nov. 9, 2007); Clerk v. First Bank, No. 09-5121 (JED), 2010 U.S. Dist. LEXIS 27206, at *24 (E.D. Pa. Mar. 22, 2010) (citing Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004)).

Here, Defendants have failed to identify a single provision in the contract that would render it unenforceable.  See Vasquez v. Glassboro Service Asso., 83 N.J. 86, 99 (1980) (noting that "[c]ontracts have been declared invalid [on public policy grounds] because they violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate public morality, or restrain trade").

Accordingly, Defendants remain bound by the contractual choice of law provisions contained in the Loan Documents and guaranty agreements, and Pennsylvania law will govern the parties' claims.³  See e.g., Cohen v. Chase Bank, N.A., 679 F. Supp. 2d 582 (D.N.J. 2010) (upholding a contractual choice of law provision in a contract of adhesion because the consequence of upholding the provision did not violate public policy).

## II. THE SIGNATORIES TO THE FORBEARANCE AGREEMENT RELEASED CLAIMS AGAINST PLAINTIFF

The first eleven of Defendants' Second Amended Counterclaims are brought by various of the Defendants who are signatories to the Forbearance Agreement.  These Defendants – Executive Car Buying Services, Executive Care Rentals, Ralph Valent, Michael LaMotta and Laval Properties – signed the original Forbearance Agreement and each of the three amendments to the agreement.  From the outset, the Forbearance Agreement contained a provision releasing

---

³ As set forth infra, pp. 7 n. 4, 8 n. 5 , New Jersey law is substantially similar to Pennsylvania law in the areas at issue on the instant motion, and this Court's decision on the motion would not be altered by the application of New Jersey law.

claims against Plaintiff.

For example, the Third Amended Forbearance Agreement[4] contains the following provision:

> <u>Release; No Discharge</u>.  As additional consideration for the Lender entering into this Amendment, the Obligor hereby fully and unconditionally releases and forever discharges the Lender...of and from any and all claims, liabilities, demands, obligations, damages, losses, actions and causes of action whatsoever which the Obligor may now have or claim to have against the Lender...as of the date hereof, whether presently known or unknown and of any nature and extent whatsoever, including, without limitation, on account of or in any Forbearance Agreement or the Loan Documents, including but not limited to all such loss or damage of any kind heretofore sustained or that may arise as a consequence of the dealings between the parties up to and including the date hereof, including but not limited to, the administration or enforcement of the Total Indebtedness or any of the Loan Documents.

(Cmplt., Ex. C at 5)

Defendants claim that the release provisions are invalid because the Forbearance Agreement and its amendments were executed under economic duress and constitute contracts of adhesion.

"In order to raise the defense of duress [under Pennsylvania law], a party must prove three elements: (1) a wrongful threat; (2) fear that induces a loss of free will and judgment; and (3) that there was no immediate legal remedy available as an alternative to executing the

---

[4] While courts must generally accept the factual allegations of the party pleading a claim as true, they are also entitled to consider documents "integral to" the pleading.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).  Additionally, courts may review documents explicitly relied on or incorporated by reference in the pleading.  <u>Id.</u> Here, the Third Amended Forbearance Agreement was appended to the Complaint and was explicitly relied upon in and is integral to Defendants' Second Amended Answer and Counterclaims.

7

agreement."[5]  Hotel Emples. & Rest. Emples. Union, Local 57 v. Sage Hospitality Res., LLC., 299 F. Supp. 2d 461, 466 (W.D. Pa. 2004) (citing Warner-Lambert Pharmaceutical Co. v. Sylk, 471 F.2d 1137, 1143 (3d Cir. 1972); Levin v. Garfinkle, 492 F. Supp. 781, 807 (E.D. Pa. 1980), aff'd, 667 F.2d 381 (3d Cir. 1981)).

"[T]here is a presumption under Pennsylvania law against finding duress where a party is free to consult with legal counsel....Furthermore, economic duress merely makes a contract voidable, not void. Even if economic duress could be shown at the time of formation....[a] party cannot sit idly by and receive benefits under a contract and then later raise claims of economic duress."  Hotel Emples. & Rest. Emples. Union, Local 57, 299 F. Supp. 2d at 466.

The Defendants who are signatories to the Forbearance Agreement have failed to plausibly allege duress.  These Defendants signed the Forbearance Agreement and its amendments – all of which contained release provisions – on four separate occasions between April 27, 2009 and December 11, 2009.  Defendants cannot plausibly claim that they were not free to consult with legal counsel at any time during this nearly eight month period or before signing any of the four agreements.

Additionally, the Defendants who signed the Forbearance Agreement did not contest its validity until Plaintiff initiated this suit, approximately nine months after they signed the first agreement containing the release provision and began reaping the benefit of Plaintiff's deferring

---

[5] Similarly, under New Jersey law the "basic elements" of an economic duress defense are that "'1. The party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and 2. Such act or threat must be one which deprives the victim of his unfettered will.'"  Cont'l Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 176 (1983) (quoting 13 S. Williston, Contracts, § 1617 at 704 (3d ed. 1970)).  Moreover, the "decisive factor is the wrongfulness of the pressure exerted."  Cont'l Bank of Pa., 93 N.J. at 177 (internal quotations omitted).

pursuit of Defendants for defaulting under the Loan Documents.  These Defendants will not be permitted to "sit idly by and receive benefits under a contract and then later raise claims of economic duress."  Hotel Emples. & Rest. Emples. Union, Local 57, 299 F. Supp. 2d at 466.

Accordingly, the release provisions set forth in the Forbearance Agreements are valid; pursuant to those provisions, Defendants have released the first eleven counterclaims and those claims will be dismissed.

### III.     DEFENDANTS DEBRA LAMOTTA AND LIN VALENT HAVE FAILED TO STATE A CLAIM FOR ABUSE OF PROCESS.

Debra LaMotta and Lin Valent bring a counterclaim for abuse of process.

"Abuse of process is a common law tort recognized in Pennsylvania as 'the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed.''"  Teeple v. Carabba, No. 07-2976 (ECR), 2009 U.S. Dist. LEXIS 119937, at *49 (E.D. Pa. Dec. 22, 2009) (quoting Ciolli v. Iravani, 625 F. Supp. 2d 276, 296 (E.D. Pa. 2009) (quoting Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)).

"To establish a claim for abuse of process, a plaintiff must be able to show that a defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[6]  Teeple,

---

[6] New Jersey law is substantially similar.  "Abuse of process is a tort actionable under state law requiring a showing of '(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of the process.'"  United States v. Sensient Colors, Inc., No. 07-1275 (JHR), 2009 U.S. Dist. LEXIS 11070, at *49 (D.N.J. Feb. 13, 2009) (citing SBK Catalogue Partnership v. Orion Pictures Corp., 723 F. Supp. 1053, 1067 (D.N.J.1989)).

2009 U.S. Dist. LEXIS 119937, at *50.

Here, Defendants Debra LaMotta and Lin Valent "deny that they are Borrower[s] or guarantors" and thus claim that the filing of the instant action "is baseless and improper." (Second Am. Answer & Counterclaims ¶ 160) However, LaMotta and Valent fail to plead what ulterior purpose Plaintiff is furthering by naming them in the instant suit, nor have they plead any specific harm Plaintiff has caused them.

Even if LaMotta and Valent had adequately plead an abuse of process claim, such a claim would be dismissed as premature. "The assertion, by way of a counterclaim, that the underlying litigation as a whole constitutes an abuse of process fails to state a claim which is ripe for adjudication [at the motion to dismiss stage]. By definition, a lawsuit in its entirety cannot constitute an abuse of process when it has not yet been concluded. " Access Fin. Lending Corp. v. Keystone State Mortg. Corp., No. 96-191 (DBS), 1996 U.S. Dist. LEXIS 14073, at *13-14 (W.D. Pa. Sept. 4, 1996); see also Giordano v. Claudio, No. 09-1456 (JRP), 2010 U.S. Dist. LEXIS 48148, at *57-59 (E.D. Pa. May 13, 2010) (dismissing a claim for abuse of process where "the Amended Counterclaim refers only to Giordano's initiation of the lawsuit and not to any discrete portions of the lawsuit (such as a subpoena or a discovery request)" because the court could not "adjudicate [the] abuse of process claim until the completion of Giordano's lawsuit.").

### IV. DEFENDANTS DEBRA LAMOTTA AND LIN VALENT HAVE ABANDONED THEIR CLAIM FOR FRIVOLOUS LITIGATION.

Debra LaMotta and Lin Valent also bring a counterclaim alleging frivolous litigation. LaMotta and Valent did not respond to Plaintiff's motion to dismiss this counterclaim. As a result, the claim for frivolous litigation is deemed abandoned and will be dismissed. See e.g.,

Speth v. Goode, No. 95-0264 (JBS), 2010 U.S. Dist. LEXIS 63404, at *17-18 (D.N.J. June 23, 2010) (dismissing as abandoned claims not addressed in opposition to a motion to dismiss).

## CONCLUSION

Defendants' Second Amended Counterclaims are dismissed as released pursuant to the Forbearance Agreements (Counterclaims 1 - 11), for failure to state a claim (Counterclaim 12) and as abandoned (Counterclaim 13).

**THEREFORE IT IS** on this 10th day of November, 2010,

**ORDERED** that Plaintiff's Motion to Dismiss Defendants' Second Amended Counterclaims is **GRANTED**.

The Clerk of the Court is directed to terminate the motion: Docket No. 53.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.